MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 81
Docket:       Ken-12-557
Submitted
 On Briefs:   July 17, 2013
Decided:      September 24, 2013

Panel:        SAUFLEY, C.J., and LEVY, SILVER, MEAD, and GORMAN, JJ.

IN RE S.P.

SAUFLEY, C.J.

[¶1]   The mother of S.P. appeals from a judgment of the District Court (Waterville, *Dow, J.*) terminating her parental rights to her then two-year-old daughter, pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2) (2012).  She asserts that she was denied due process because her attorney was ineffective.  She also asserts that there was insufficient evidence to support the judgment of termination. We affirm the judgment.

## I. BACKGROUND

[¶2]   The mother has a substantial history of involvement with child protective agencies in Florida and in Maine.  Her six older children all went into state care and eventually came to reside with other caregivers.  Her parental rights to two of those children were terminated involuntarily in Maine.  Over the course of at least ten years, she has been offered multiple services, structure, and assistance, and has demonstrated a persistent inability to recognize people who

pose a risk to her children's safety. She has a history of allowing violent or sexually assaultive people to care for her children, along with a refusal to recognize the risks to them.

[¶3] When S.P. was born in May 2010, the mother no longer had any of her older children in her care. Despite the previous unsuccessful agency efforts with the mother, the court ordered extensive continued efforts to rehabilitate the mother and to assist her in safely parenting her youngest daughter. Many services were provided during S.P.'s first year of life when she lived with her mother in Maine. On July 29, 2011, the court ordered S.P.'s removal from her mother's home when her mother's plan to flee to another state became apparent.

[¶4] When S.P. came into foster care at the age of fourteen months, she demonstrated odd sexualized behaviors and extreme difficulty with food. She would eat until she vomited, and if not watched carefully would store food in her cheeks. The mother was provided with nonoffender group therapy, a Child Abuse and Neglect Evaluators Program (CANEP) evaluation, and further resources to improve her capacity to parent. The guardian ad litem noted in a report prior to the petition to terminate that the mother had made little progress in the nonoffenders group. The CANEP evaluation demonstrated that the mother suffers from diffuse cognitive deficits and borderline personality disability, and was historically unable to change and improve her capacity to provide a safe environment and assure that

dangerous individuals were not allowed to provide child care or have access to S.P. The mother made no progress toward reunification through the CANEP evaluation and other services provided. After S.P. was placed in foster care, the mother moved several times, farther from her child; would not consistently attend individual counseling; and did not successfully complete nonoffender treatment.

[¶5] The Department of Health and Human Services sought termination of the mother's parental rights to S.P.[1] The mother was notified of the date of the termination proceeding but did not appear.[2] The mother's counsel, who did appear on her behalf, initially sought to withdraw, noting that the mother was oppositional, had threatened the attorney, and no longer wished to work with the attorney. The court denied the motion to withdraw. The attorney then sought a continuance on her client's behalf, which the court also denied.

[¶6] The hearing then occurred in an abbreviated fashion with testimony from four witnesses, including the guardian ad litem, and stipulated documentary exhibits admitted without testimony from the authors of the documents. The

---

[1] S.P.'s father consented to an order of termination of his parental rights and does not contest that termination.

[2] The docket entries regarding the notice of the termination hearing indicate that the hearing was scheduled to occur on June 13, 2012, and June 14, 2012. The hearing thus began on June 13, 2012. Although the mother believed the date had been changed from "the 29th" to June 13, the mother did not assert at the hearing, nor does she argue to us, that she did not receive notice of the specific date of the hearing.

4

mother's counsel did not present any witnesses or cross-examine any of the Department's witnesses.

[¶7] The court found by clear and convincing evidence that the mother has abandoned the child; that she is unwilling or unable to protect the child from jeopardy and that these circumstances are unlikely to change within a time that is reasonably calculated to meet the child's needs; that the mother is unwilling or unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs; and that the mother has failed to make a good faith effort to rehabilitate and to reunify with the child pursuant to 22 M.R.S. § 4041 (2012). *See id.* § 4055(1)(B)(2)(b). The court ultimately determined that the child is well bonded to the foster mother and is thriving in the foster home, which is a pre-adoptive placement. *See id.* § 4055(1)(B)(2)(a). The court terminated the mother's parental rights, and she appealed to us. *See* 22 M.R.S. § 4006 (2012).

## II. DISCUSSION

[¶8] Although the mother challenges the sufficiency of the evidence to terminate her parental rights, the court's judgment has adequate support on the record. Despite her history of failing six other children, the court gave the mother the opportunity to obtain and make use of services to allow her to be a safe parent to her daughter. The mother was simply unable or unwilling to take advantage of

the services offered. Her failure to complete treatment, her unwillingness to work with service providers, and her inability to understand the dangerous circumstances she had put her children in by placing them with predatory and dangerous caretakers are more than sufficient to support the court's multiple findings of unfitness. Regarding the best interests of S.P., her initial sexualized behavior (at only fourteen months old) and her regurgitation and storing of food eventually ceased, and she has become a happy and thriving little girl. The court did not err in concluding that termination is in S.P.'s best interest.

[¶9] The mother also argues that her due process rights were violated when, among other things, her attorney failed to cross-examine witnesses at the hearing for which the mother failed to appear. Counsel on appeal, who was not counsel at trial, urges us to conclude that trial counsel's motion to withdraw and motion to continue were insufficient efforts and that trial counsel should have cross-examined and challenged the Department's evidence even in the mother's absence. The mother does not, however, provide any explanation of her absence from the most important hearing in her daughter's life other than her initial indication in her notice of appeal that she had to work that day, nor does she offer information that would persuade us that cross-examining the Department's witnesses would have changed the outcome in this matter. *See In re Scott S.*, 2001 ME 114, ¶ 30, 775 A.2d 1144 (holding that we will affirm a judgment if it is

6

"highly probable" that any error "had no prejudicial effect and did not affect the outcome"); *cf. In re Randy Scott B.*, 511 A.2d 450, 452-54 (Me. 1986) (affirming the court's consideration of the involuntarily absent, incarcerated father's testimony in deposition form). There is no evidence that the mother's absence was anything other than a voluntary decision on her part.[3] In her absence, counsel's efforts to withdraw and seek a continuance were appropriate, and the court's decision to deny both in order to assure a timely hearing on S.P.'s need for permanency demonstrated no abuse of discretion. *See In re Trever I.*, 2009 ME 59, ¶ 28, 973 A.2d 752. Finally, although the mother faults trial counsel for failing to offer substantive evidence or cross-examine witnesses, she offers no suggestions as to what evidence should have been offered or how rigorous cross-examination would have changed the outcome had all of the Department's witnesses testified, including the authors of documents admitted by stipulation.

[¶10] When a parent's attorney appears at a termination hearing in the absence of the parent, the attorney should certainly act to protect the parent's rights

---

[3] The mother did not move to set aside the judgment based on an unavoidable inability to appear. Her request for transcript contained this statement: "The state changed the court date from the 29th to June 13th and 14th without giving my defence [*sic*] time to prepare," and her notice of appeal indicated that she was "not able to get time off from [her] job" on June 13 and 14. Nothing in the court file indicates that the hearing had been scheduled for May or June 29. After the hearing, but before the entry of judgment, a licensed clinical professional counselor who had very recently seen the mother filed a letter with the trial court questioning why the termination hearing had been rescheduled and why the mother was not given more time to try to demonstrate a capacity to parent. Because the letter was filed after the close of evidence and was not accompanied by a motion of any kind, it could not be considered as substantive evidence.

wherever possible. When the parent has not succeeded in making the changes required for reunification and has failed to take advantage of the services offered, however, there is little that counsel can do.[4] Here, the court directed the Department to undertake a renewed effort to assist the mother with S.P. notwithstanding her inability to show progress with six other children. She had court-appointed counsel throughout this proceeding, had notice and an opportunity to be heard, and had the opportunity to assist counsel in opposing the termination hearing, though she chose not to do so. We will not further address a claim of incompetence of counsel on these facts.

[¶11] The court did not err in terminating the mother's rights to S.P., and the mother was not deprived of due process.

---

[4] We have not previously announced the standards by which to judge a claim of ineffective representation in a child protection proceeding, and we need not do so to decide this appeal. The mother does not contend that her trial counsel's active participation at trial would have resulted in a different outcome. Without an argument that the mother suffered actual prejudice, there is no claim of ineffective representation for us to adjudicate. *See In re A.M.*, 2012 ME 118, ¶ 25, 55 A.3d 463. In addition, a claim of ineffective assistance of counsel should generally be raised with the trial court before an appeal is taken so that an adequate record can be made. *See* M.R. Civ. P. 59, 60(b); *see also* Susan Calkins, *Ineffective Assistance of Counsel in Parental-rights Termination Cases: The Challenge for Appellate Courts*, 6 J. App. Prac. & Process 179, 203-05 (2004).

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Pamela S. Holmes, Esq., Holmes Legal Group, LLC, Wells, for appellant mother.

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Augusta, for appellee Department of Health and Human Services

Waterville District Court docket number PC-11-10