MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2015 ME 138
Docket:         Cum-14-131
Submitted
  On Briefs:    June 2, 2015
Decided:        October 29, 2015

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

# IN RE M.P.

**SAUFLEY, C.J.**

[¶1]  This appeal requires us to identify a process by which a parent may challenge a judgment terminating parental rights based on ineffective assistance of counsel.  The mother of M.P. appeals from a judgment entered in the District Court (Portland, *Powers, J.*) terminating her parental rights pursuant to 22 M.R.S. § 4055(1) (2014) and denying her motion for relief from judgment pursuant to M.R. Civ. P. 60(b)(6) based on her claim of ineffective assistance of counsel.  In addition to challenging the judgment terminating her parental rights, the mother argues that she was denied due process because she was not provided with the effective assistance of counsel and was not allowed to present witnesses' testimony at the hearing on the Rule 60(b)(6) motion.  We now address the process to be employed for raising ineffective assistance claims in termination of parental rights matters, adopt a standard modeled after *Strickland v. Washington*, 466 U.S. 668 (1984), and affirm the judgment.

2

## I. BACKGROUND

A.    Factual Findings

[¶2]  Following a hearing on a petition filed by the Department of Health and Human Services to terminate the mother's parental rights to her daughter, the court found the following facts by clear and convincing evidence, and the findings are supported by competent evidence in the record.[1]  *See In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.  When M.P. was born in December 2011, personnel at Maine Medical Center contacted the Department regarding the mother's inability to meet the child's basic needs and to remember instructions that were given to her.  In January 2012, the Department filed a petition for a child protection order, and M.P. was placed with her mother's aunt.

[¶3]  The mother has cognitive limitations and has suffered from anxiety and depression.  From March 2012 to October 2012, the mother had visits with M.P. twice a week.  During the visits, the mother needed a lot of reminding about how to care for M.P., and she was not consistent in her care.

[¶4]   In October 2012, the mother and M.P. entered the Mary's Place residential parenting program.  While at Mary's Place from October 2012 to June

---

[1]  In April 2012, the mother agreed to an order finding jeopardy based on the "significant domestic violence in her relationship with the father, [her] inability to protect the child, . . . need of parenting education, and concerns about cognitive limitations that compromise the ability to safely care for the very young and vulnerable child."  The jeopardy order required the mother to participate in the Child Abuse and Neglect Evaluation Program, individual therapy, parenting education, and a domestic violence group.

2013, the mother struggled to understand M.P.'s developmental needs and to apply the advice that she was given to different situations. The mother had difficultly multi-tasking and there continued to be safety concerns; sometimes the mother would confine M.P. too long in her crib or highchair as a way of accomplishing other tasks without having to worry about her.

[¶5]  When the mother left Mary's Place with M.P. after seven months of residential on-site parenting training and treatment, she still needed regular repetition and continued in-home support. Once back in her home, the mother was involved in the Spurwink Family Reunification Program for four to ten hours weekly, and she received ten to twenty hours per week of independent living skills services through Merrymeeting Behavioral Health.

[¶6]  During the several months that the mother was involved in the Program, staff had to repeatedly address safety issues with the mother; she needed regular prompting and had trouble supervising M.P., who was by then an active toddler. After a team meeting in August 2013, the Program's staff decided to end its services for the mother and M.P. The team agreed that the mother needed support in a residential care program, which was no longer available. The mother was unable to progress to the parent education part of the Program because of ongoing safety concerns.

4

[¶7] After the Program ended, M.P. returned to living with her mother's aunt, and biweekly visits resumed with the mother. The mother was still not consistent in her care during visits.

B.     Termination Hearing

[¶8] After a year of intensive services, including the residential parenting program at Mary's Place, the Department filed a petition for termination of the mother's parental rights on October 30, 2013.[2] The termination petition asserted that, although the mother had consistently participated in all reunification services, "[h]er intellectual limitations are preventing [her] from having the ability to comprehend, understand and consistently implement the parenting skills, to be pro-active in anticipating safety issues and to manage the ongoing changes related to her child's overall development." The termination hearing was held in February 2014. The Department presented testimony from six witnesses: a psychologist who conducted an evaluation for the Child Abuse and Neglect Evaluation Program,[3] a social worker from Mary's Place, a case management worker from Mary's Place, a visit supervisor, a case management supervisor with Spurwink's Family Reunification Program, and M.P.'s caseworker from the Department. The

---

[2]  The Department also petitioned for termination of M.P.'s father's parental rights. The father did not attend the termination hearing, and the court terminated the father's parental rights on March 13, 2014. *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2) (2014). The father did not appeal from that judgment.

[3]  At the time of the hearing, the Child Abuse and Neglect Evaluation Program had been dissolved and was replaced by the Court Ordered Diagnostic Evaluation (CODE) program.

mother testified, but her attorney presented no other witnesses on her behalf. The guardian ad litem (GAL) also testified, and the court took judicial notice of all GAL reports.

[¶9] The mother was twenty-five years old at the time of the termination hearing and had recently obtained her high school diploma. She was residing in Portland in an apartment and regularly engaging in services. She was seeing a therapist weekly and taking anxiety medication; she was having panic attacks at times. The mother admitted that it takes her longer than normal to "get it," but she feels that she can care for M.P. with support from daycare and friends.

[¶10] At the hearing, the GAL opined that, although the mother had made a good faith effort to reunify, she still lacked the ability to meet the safety and developmental needs of M.P., she could not seem to apply the skills she had been taught to different circumstances, and she needed regular repetition of model parenting skills. The court found the GAL's opinion credible.

[¶11] The District Court terminated the mother's parental rights in a judgment entered on March 13, 2014. The court found that, though not unwilling, the mother is unable to protect the child from jeopardy or take responsibility for the child in a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii). The court also found that termination is in M.P.'s best

6

interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a). The mother timely appealed from the termination judgment.

C.    Motion for Relief from Judgment Pursuant to M.R. Civ. P. 60(b)(6)

[¶12] While the appeal was pending, on June 17, 2014, the mother filed a motion for remand claiming that she had been denied her right to due process at the termination hearing based on ineffective assistance of counsel. By order dated June 18, we granted the mother's motion, stayed her pending appeal, and remanded the matter to the District Court to permit the mother to file, and the District Court to act on, a motion for relief from judgment. On June 25, 2014, the mother moved for relief from judgment pursuant to M.R. Civ. P. 60(b)(6). In her motion, the mother asserted, among other things, that her attorney had failed to call or subpoena witnesses who would have offered favorable testimony regarding the mother's strengths and ability to parent M.P., and had neglected to prepare her to testify on her own behalf. Attached to the motion were affidavits from the mother, the mother's counselor, the mother's teacher at Portland Adult Education, and a close friend. The mother requested an evidentiary hearing to call witnesses on her behalf and present her own prepared testimony.

[¶13] At a trial management conference, the court made it clear that the hearing on the motion would not be an opportunity to relitigate the termination case. Instead, the court indicated that it would allow the mother and the mother's

former attorney to testify and would also consider the affidavits submitted with the motion.

[¶14] The hearing on the motion for relief from judgment was held on August 13, 2014. Because the process employed and the evidence presented to the court at the hearing are relevant to our due process analysis on appeal, we describe the proceedings in further detail: The mother testified at the hearing and described her relationship with her former attorney. She also testified that her counselor, her teacher, and her friend would have testified that she was a hard-working student, loved her daughter very much, and was dedicated to bettering herself. The mother's former attorney testified that she had represented parents in child protection matters for five years, but she had never prevailed on behalf of a parent in a termination proceeding. She testified that she had attended monthly team meetings, met separately with the mother multiple times in person, and made phone calls to the mother and to service providers before the termination hearing. She described her trial strategy as "pok[ing] holes in the State's case." Further, she testified that she had spoken to some of the witnesses the mother was now claiming should have been called at the termination hearing and decided that their testimony could not address the Department's continuing safety concerns. The attorney testified that she was not told about the mother's teacher and that she had

8

only met the mother's friend a week before the trial and did not want to risk putting someone she had just met on the stand.

[¶15] After hearing from the mother and the mother's former attorney, and considering affidavits from other potential witnesses, the court denied the mother's motion for relief from judgment on August 20, 2014. Guided by the method by which ineffective assistance of counsel claims are dealt with in the criminal context, the court found that the mother had failed to prove that her former attorney's performance was "outside the normal or typical range of trial work in termination cases." The court also found that, "despite the mother's desires and affection for [her daughter]," there was "considerable and persuasive" evidence supporting termination and that the other witnesses would not have made any appreciable difference in the evidence: "It is highly unlikely that additional testimony about [the mother's] educational achievement, love for her child, or condition of her home would affect the court's conclusions that supported termination." The court further found that, although the mother's attorney could have approached preparing for the termination hearing differently, she was not required to do so and did not fail in her obligations to competently represent the mother before or during trial. Ultimately, the court found that the attorney's "performance did not cause actual prejudice to [the mother]." The mother appealed. *See* 22 M.R.S. § 4006 (2014); M.R. App. P. 2.

## II. DISCUSSION

[¶16]  We now review both the mother's original appeal from the judgment terminating her parental rights and the court's ruling on the Rule 60(b) motion. Regarding the initial judgment, there is competent evidence in the record to support the court's finding, by clear and convincing evidence, of at least one ground of parental unfitness.  *See In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.  Moreover, the court did not commit clear error or abuse its discretion in determining that termination of the mother's parental rights was in the child's best interest.  *See In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

[¶17]  Regarding the court's judgment denying her motion for relief based on ineffective assistance of counsel pursuant to M.R. Civ. P. 60(b)(6), the mother argues that the court denied her due process by not allowing her to call witnesses to testify at the hearing.  There exists no statute or rule explicitly addressing the process by which a parent may raise a claim of ineffective assistance of counsel in a termination of parental rights proceeding or the standard that a court should apply when making such a determination.  Accordingly, we address the applicable standard and the mother's due process argument.

A.    Process to Raise a Claim of Ineffective Assistance of Counsel

[¶18]  We have not yet had the opportunity to opine on the best procedural vehicle for raising a claim of ineffective assistance of counsel in a termination of

parental rights proceeding. To ensure the prompt and final determination of petitions to terminate parental rights, many jurisdictions require that these claims be raised on direct appeal. *See* Susan Calkins, *Ineffective Assistance of Counsel in Parental-Rights Termination Cases: The Challenge for Appellate Courts*, 6 J. App. Prac. & Process 179, 200 (2004) ("The most common vehicle for raising an ineffectiveness claim in a parental-termination case is the direct appeal of the termination order."); *see also State ex rel. Juvenile Dep't of Multnomah Cty. v. Geist*, 796 P.2d 1193, 1201 (Or. 1990) ("Because of the importance of expeditious resolution of termination proceedings, and absent statutes providing otherwise, we hold that any challenges to the adequacy of appointed trial counsel in such proceedings must be reviewed on direct appeal."); *In re RGB*, 229 P.3d 1066, 1085-86 (Haw. 2010) (collecting cases). Other state courts allow parents to raise ineffective assistance of counsel in a petition for a writ of habeas corpus, *see In re Paul W.*, 60 Cal. Rptr. 3d 329, 333 (Ct. App. 2007), or by a motion made under rules similar to M.R. Civ. P. 60(b), *see Ex parte E.D.*, 777 So. 2d 113, 116 (Ala. 2000).

[¶19] To promote the swift resolution of ineffectiveness claims, and in the absence of a statutorily created process, we now hold that a parent may raise an ineffective assistance of counsel claim in a direct appeal from an order terminating his or her parental rights if there are no new facts that the parent seeks to offer in

support of the claim. That is, a direct appeal from an order terminating a parent's parental rights may include a claim that the parent's attorney provided ineffective assistance when the record is sufficiently well developed to permit a fair evaluation of a parent's claim.

[¶20] We anticipate, however, that there may be circumstances in which the record does not illuminate the basis for the challenged acts or omissions of the parent's counsel. In that event, the parent must *promptly* move for relief from a judgment terminating his or her parental rights pursuant to M.R. Civ. P. 60(b)(6) to raise a claim of ineffective assistance of counsel. The motion for relief from judgment should be filed no later than twenty-one days after the expiration of the period for appealing the underlying judgment.[4] After a hearing before the trial court, if the parent's Rule 60(b)(6) motion is denied, the trial court's findings will amplify the record and provide the necessary context should the parent decide to pursue an appeal of that decision along with the appeal of the underlying judgment terminating parental rights—as has occurred here.

---

[4] In order to ensure that this time frame works, the District Court must ensure that parents appealing from a termination order who need new counsel on appeal are assigned new counsel immediately. With that process, this time frame should, in most circumstances, allow for new counsel to meet with the parent and obtain the information necessary to raise the claim in the rare instances where it is appropriate. We need not now determine whether, in exceptional and unusual circumstances, a parent may move for relief pursuant to M.R. Civ. P. 60(b)(6) outside of this period. In the absence of statutory guidance, we leave to future development the potential that, after balancing the children's interests with the parent's interests, a trial court may act on such a motion.

12

[¶21]  To bring a claim of ineffective assistance of counsel, either on direct appeal or by way of a Rule 60(b)(6) motion, the parent making the claim must submit a signed and sworn affidavit stating, with specificity, the basis for the claim.[5]  In addition, the parent's affidavit accompanying a Rule 60(b)(6) motion must also be accompanied by affidavits from any individuals the parent asserts should have been called as witnesses during the termination hearing, and from any individuals who have evidence that would bolster the parent's claim that the performance of his or her attorney was deficient and that the deficiency affected the fairness of the proceeding.  Because of the counter-balancing interests of the State in ensuring stability and prompt finality for the child, if the parent fails to comply with this procedure, the parent's motion asserting the ineffective assistance of counsel must be denied.

B.     The Applicable Standard on an Ineffective Assistance of Counsel Claim

[¶22]  As the trial court correctly noted, we have not yet addressed the standard that will apply in assessing a parent's claim of ineffective assistance of counsel in termination of parental rights proceedings.  *See In re S.P.*, 2013 ME 81, ¶ 10 n.4, 76 A.3d 390.  Courts in other jurisdictions that recognize a parent's right

---

[5]  When the claim of ineffective assistance of counsel is made on direct appeal, the affidavit of the parent will not assert facts outside the trial record but will affirmatively state the parent's intention to claim that trial counsel was ineffective as demonstrated by that record.

to the effective assistance of counsel in termination proceedings have generally applied one of two very similar standards.

[¶23] The first is the same standard used in criminal cases, which was first announced in *Strickland v. Washington*, 466 U.S. 668. The *Strickland* standard is a two-part test for determining ineffectiveness in the criminal context:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. "Because of the difficulties inherent in making [such an] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689.

[¶24] The other standard used to address ineffectiveness claims is the "fundamental fairness" standard announced in *Geist*, 796 P.2d at 1203. The fundamental fairness standard is similar to the *Strickland* standard; it requires, for a parent's challenge to succeed, that a parent demonstrate that appointed counsel failed to "exercise professional skill and judgment" and that the attorney's

"inadequacy prejudiced [the parent's] cause to the extent that [the parent] was denied a fair trial." *Id.* at 1203-04.

[¶25] Both the *Strickland* standard and the fundamental fairness standard require that a parent demonstrate an attorney's inadequate performance and some form of prejudice. The majority of state courts confronting this issue have adopted the *Strickland* standard. *See, e.g.*, *Jones v. Ark. Dep't of Human Servs.*, 205 S.W.3d 778, 794 (Ark. 2005); *People ex rel. C.H.*, 166 P.3d 288, 290-91 (Colo. App. 2007); *In re R.E.S.*, 978 A.2d 182, 191 (D.C. 2009); *In re S.N.H.*, 685 S.E.2d 290, 298 (Ga. Ct. App. 2009); *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003); *In re J.R.G.F.*, 250 P.3d 1016, 1018 (Utah Ct. App. 2011); *see also* Calkins at 214-15 & nn.180-188 (collecting cases). *But see In re RGB*, 229 P.3d at 1090; *Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1039-41 (Ind. 2004).

[¶26] We now adopt the *Strickland* standard to govern ineffective assistance of counsel claims in termination of parental rights proceedings. Although we recognize that this standard—developed through criminal law proceedings—may have to be tailored to termination of parental rights proceedings in some respects, the deprivation of parental rights is in many ways similar to the deprivation of liberty interests at stake in criminal cases.[6] The *Strickland* standard is known to

---

[6] Although *Strickland* was a death penalty case, the standard announced therein has been applied in cases that involve only incarceration. *See Strickland*, 466 U.S. at 687; *see, e.g.*, *Manley v. State*, 2015 ME 117, ¶¶ 3, 11-18, --- A.3d ---.

the bar and the bench, and *Strickland* carries with it a developing body of case law, which will aid courts in the efficient and timely resolution of such claims.[7] Moreover, the importance of finality in termination proceedings supports the use of the *Strickland* standard. A more "intrusive post-trial inquiry" could "encourage the proliferation of ineffectiveness challenges," *Strickland*, 466 U.S. at 690, and possibly delay the permanency that is necessary to stabilize a child's placement in a safe environment.

[¶27] Thus, a parent claiming ineffective assistance of counsel in a termination proceeding may directly appeal from the judgment terminating her parental rights if the record does not need to be supplemented to support her claim. Otherwise, the parent must move promptly—ordinarily, within twenty-one days after the expiration of the appeal period—for relief from judgment pursuant to M.R. Civ. P. 60(b)(6). Regardless of which procedural route a parent takes to raise an ineffective assistance of counsel claim, it is the parent's burden to demonstrate that (1) counsel's performance was deficient, i.e., that "there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney,"

---

[7] For clarification of the components of the *Strickland* standard, see *Theriault v. State*, 2015 ME 137, --- A.3d ---, certified on this date. Here, the court found both that the mother had failed to demonstrate inadequate performance by counsel and that she had failed to prove prejudice. Thus, no remand for the court to clarify its analysis of the prejudice prong is required. *See id.* ¶ 30.

16

*Aldus v. State*, 2000 ME 47, ¶ 12, 748 A.2d 463 (quotation marks omitted), and (2) the parent was prejudiced by the attorney's deficient performance in that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," *Strickland*, 466 U.S. at 686.

C.    The Due Process Analysis

[¶28]  In the matter before us, although the mother did not move for relief from judgment pursuant to Rule 60(b)(6) within twenty-one days after the expiration of the appeal period, we nonetheless allowed a hearing on the motion because we had not previously opined on this issue.

[¶29]  The trial court held the Rule 60(b)(6) hearing, the mother received court-appointed counsel, and the mother had the opportunity to present evidence. The mother now argues that the court denied her due process in that proceeding when it declined to allow her to call additional witnesses at the hearing and instead accepted testimony from the mother regarding what she believed the witnesses would have testified to and considered the witnesses' sworn affidavits.

[¶30]  "When due process is implicated, we review such procedural rulings to determine whether the process struck a balance between competing concerns that was fundamentally fair."  *In re A.M.*, 2012 ME 118, ¶ 14, 55 A.3d 463 (quotation marks omitted).  "'The fundamental requirement of due process is the

opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.*

¶ 15 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks

omitted)). "It is a flexible concept that calls for such procedural protections as the

particular situation demands." *Id.* (quotation marks omitted).

[¶31] When analyzing whether a party was afforded the process that is due,

we balance the three factors articulated by the Supreme Court of the United States

in *Mathews v. Eldridge*, 424 U.S. 319:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

*Id.* at 335.

[¶32] The first and third *Mathews* factors—the parent's interest and the

government's interest—are well established and need little explication. The

parent's interest is significant because a parent has a statutory right to legal counsel

in child protection proceedings given the important liberty interests at stake, *see*

22 M.R.S. § 4005(2) (2014), and, at a termination hearing, the ineffective

assistance of counsel could significantly interfere with a parent's "fundamental

right to parent [a] child and to maintain a parental relationship free from state

interference," *In re Cody T.*, 2009 ME 95, ¶ 25, 979 A.2d 81. As to the third

factor, the State has a significant interest in obtaining stability and permanency for children within a reasonable time. *See* 22 M.R.S. §§ 4003(4), 4050(2) (2014).

[¶33]  We focus on the second *Mathews* factor, which requires us to consider whether the procedures used by the court—and the court-imposed limitation on the mother's ability to call witnesses at the Rule 60(b)(6) hearing—posed a significant risk that the mother would not be able to demonstrate her trial counsel's deficiency and resulting prejudice, which, pursuant to *Strickland*, is the necessary test for proving that she was denied her right to effective counsel.

[¶34]  The process employed by the court at the Rule 60(b)(6) hearing was thoughtful and well balanced.  Through the evidence presented by the live testimony of the mother and her former attorney, and the affidavits of other potential witnesses, the court was able to assess the quality of the evidence that the mother claimed should have been offered at the termination hearing.  In this regard, the court was able to determine both whether the mother's former attorney's decision not to call these witnesses was outside what might be expected "of an ordinary fallible attorney," *Aldus*, 2000 ME 47, ¶ 16, 748 A.2d 463, and whether the witnesses' averments, together with the mother's testimony about what she believed those witnesses would have testified to, demonstrated that "counsel's errors were so serious as to deprive" the mother of "a fair trial, a trial whose result is reliable," *Strickland*, 466 U.S. at 687.  Thus, the process employed by the court

created a low risk of an erroneous deprivation of the right to effective assistance of counsel to protect the mother's private liberty interest.

[¶35] We do not suggest that a court should never allow sworn testimony in addition to the affidavits. In some cases, it may be necessary to assess the credibility of the witnesses from whom the court receives affidavits to resolve disputes of fact that would establish whether counsel was ineffective. In this case, however, the affidavits were sufficient to demonstrate the quality of the mother's additional evidence so that the court could assess both the attorney's judgment in not calling the witnesses and whether the absence of that evidence prejudiced the mother. *See Strickland*, 466 U.S. at 687; *Aldus*, 2000 ME 47, ¶¶ 16, 20, 748 A.2d 463.

[¶36] Thus, when a parent promptly moves for relief from judgment pursuant to M.R. Civ. P. 60(b)(6) based on ineffective assistance of counsel, it is for the trial court to determine what process is necessary to meaningfully assess a parent's claim while balancing the State's important interest in expeditiously establishing permanent plans for children. *See Mathews*, 424 U.S. at 333-35. Such a determination will necessarily call upon a trial court to tailor the process to the facts and circumstances of each case.

[¶37] After reviewing the *Mathews v. Eldridge* considerations, we conclude that the procedures followed by the District Court on the mother's motion for relief

from judgment were adequate to protect her liberty interest, while at the same time protecting the State's interest in promoting the child's stability and permanency without undue delay. No due process violation has been demonstrated on this record.

### III. CONCLUSION

[¶38] Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (quotation marks omitted). To successfully and efficiently process a parent's ineffective assistance of counsel claim without undermining the Legislature's stated purpose of "[p]romot[ing] the early establishment of permanent plans for the care and custody of children who cannot be returned to their family," 22 M.R.S. § 4003(4), a parent may, when appropriate, directly appeal from the judgment terminating her or his parental rights asserting ineffective assistance of counsel. If it is necessary to supplement the record before appealing from the judgment, a parent must move for relief from judgment pursuant to M.R. Civ. P. 60(b)(6) within twenty-one days after the time frame authorized for taking an appeal. Whether by commencing an appeal or by filing a motion, the parent must support his or her claim of ineffective assistance with one or more affidavits. When addressing a parent's claim, courts will apply the *Strickland* standard—modified as necessary to account for the differences between criminal law and termination of parental rights proceedings—to determine

whether a parent's counsel's performance at the termination proceeding was deficient and whether such deficiency prejudiced the parent.

[¶39] On the adequate record before us, the court did not violate due process by declining to allow the mother to call other witnesses at the Rule 60(b)(6) hearing, *see Mathews*, 424 U.S. at 333-35, or abuse its discretion in denying the mother's motion for relief from judgment, *see In re David H.*, 2009 ME 131, ¶ 41, 985 A.2d 490.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Henry I. Shanoski, Esq., Portland, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2012-03