MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2019 ME 129
Docket:        Yor-18-461
Submitted
  On Briefs:   June 26, 2019
Decided:       August 6, 2019
Revised:       November 21, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF MEAGAN C.

SAUFLEY, C.J.

[¶1]  A mother and father appeal from a consolidated judgment of the District Court (York, *Duddy, J.*) terminating their parental rights to their children.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2018).[1]  Both parents challenge the sufficiency of the evidence supporting the court's determination that they are parentally unfit and contend that the court abused its discretion in determining that termination was in the children's best interests.  Additionally, the father challenges the denial of his post-judgment

---

    [1]  The children subject to this appeal are two girls and one boy.  The mother and father are the biological parents of the girls and the mother is the biological parent of the boy.  The father was the legal father of the boy because he and the mother were married at the time she gave birth to the boy.  The father has since, however, consented to the termination of his parental rights with respect to the boy, 22 M.R.S. § 4055(1)(B)(1) (2018); he does not appeal from the judgment.  The judgment now on appeal terminated the boy's biological father's parental rights; he does not appeal from that judgment.

Rule 60(b)(6) motion for relief from judgment on the ground of ineffective assistance of counsel. *See* M.R. Civ. P. 60(b)(6). We affirm the judgments.

## I. BACKGROUND

[¶2] In June 2017, the Department petitioned to terminate the parents' parental rights as to the girls, and the mother's parental rights as to the boy. *See* 22 M.R.S. § 4052 (2018). The court (*Duddy, J.*) held a three-day hearing, from September 25 through September 27, 2018, on the Department's petition at which both parents were present and represented by counsel. *See* 22 M.R.S. § 4054 (2018).

[¶3] By judgment dated November 2, 2018, the court terminated the parents' parental rights as to the girls, and the mother's parental rights as to the boy. *See id.* § 4055(1)(B)(2)(a), (b)(i)-(ii). The court found by clear and convincing evidence that each parent (1) is unwilling or unable to protect the children from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the children's needs and (2) has been unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet the children's needs. *See id.* § 4055(1)(B)(2)(b)(i)-(ii). The court also found by clear and convincing evidence that termination of the parents' parental rights is in the children's best

interests.  *See id.* § 4055(1)(B)(2)(a); *In re Caleb M.*, 2017 ME 66, ¶ 6, 159 A.3d 345.

[¶4]  The court's supported factual findings as to the mother's fitness are as follows:

> The children were taken into custody over two years ago. Since that time, [the mother] has failed to resolve her chronic substance abuse and to address her mental health.  [The mother] has continued to use drugs and alcohol, has failed to get clean and sober, and is currently abusing alcohol and Subutex.  [The mother] bullies and threatens her treating physician to support her various substance use habits.  [The mother] lies about and minimizes her substance use, and is in a state of denial and dishonesty.  [The mother] has failed to seek out and obtain mental health treatment, and has failed to address her mental health issues.  [The mother] has failed to nurture a healthy attachment with [the children].  The GAL testified at trial that in his opinion [the mother] has not improved at all since the start of this case, and the Court agrees.

> Given her continued state of poly substance abuse, [the mother] is currently unable and unwilling to protect her children from jeopardy.  She is also currently unable and unwilling to take responsibility for her children.  After two years, [the mother]'s visits with her children are still fully supervised.  Even in a supervised setting, [the mother] is barely able to feed [the boy], and totally unable to take responsibility for a child with his profound disabilities.  [The mother]'s visits with [the girls] have been hurtful and counterproductive.  [The mother] has demonstrated no understanding of or ability to manage [the younger girls]'s anxiety disorder or [the older girl]'s PTSD.  In view of [the mother]'s failure for over two years to make any progress toward sobriety and improved mental health, and her current state of denial, [the mother] shows no prospect for the foreseeable future of protecting the children from jeopardy, or taking responsibility for them.

4

The court's supported evidentiary findings as to the father's parental fitness are

as follows:

> In the over two years since [the girls] were taken into Department custody, [the father] has done next to nothing to alleviate jeopardy or take responsibility for the girls. When he was given visitation in late 2016, after being released from jail, he missed several visits and his visitation was suspended. Soon after visitation was resumed, [the father] relapsed, and he asked for visitation to be suspended. He failed to engage consistently or successfully in any services while he was not incarcerated. He has only recently begun participating in services during his current jail sentence. He concedes that it will be at least nine to ten months before he might be ready to parent the girls. . . . [T]he Court finds that prediction unrealistic. The smallest thing triggers [the father]'s drug use, and his track record establishes that [the father] is not willing or able to do the work necessary to improve his situation. [The father] will not be able to protect the girls from jeopardy, or take responsibility for them, anytime in the foreseeable future. Accordingly, [the father] is unable or unwilling to protect the girls from jeopardy, or to take responsibility for them, within a time reasonably calculated to meet their needs.

[¶5] The court also made the following supported findings regarding the

best interests of the children:

> [The boy] . . . has lived with the [foster parents] for most of his life. The [foster parents] have learned how to interpret [the boy]'s facial expressions and how to read his body language. [The foster mom] understands how to implement lessons learned from [the boy]'s many therapies. [She] has also figured out how to successfully feed [the boy]. The [foster parents'] household is stable, and provides a safe environment in which all of [the boy]'s substantial physical and emotional needs can be met. [The boy] is not old enough, or intellectually able, to express a meaningful preference. However,

the fact that [the boy] has thrived in the care of the [foster parents] reflects his deep and meaningful bond with [them].

[The mother] . . . ha[s] demonstrated no ability to take care of [the boy]. [The boy] has not lived with [the mother] . . . for over two years, and has no ability to integrate back into a home with [the mother] . . . . [The mother] lives with her current boyfriend . . . who in turn lives in the home of his parents. [He] has never met [the boy], and has no realistic understanding about the extent of [the boy]'s physical and intellectual disabilities. [The boyfriend]'s statements that [the boy] (along with [the girls]) are all welcome to move into his parent's house with him, are fanciful and unpersuasive. [The mother] thus lacks stable and safe housing for [the boy]. In light of all of the above, therefore, terminating the parental rights of [the mother] . . . is in [the boy]'s best interest.

. . . [The girls] have lived in foster care for well over two years. Both girls were in deep distress when they were taken into Department custody, and have improved physically and emotionally with the loving care, structure, and constancy of their therapeutic foster family. Both girls, however, still have emotional and mental health challenges arising from their respective diagnoses and the trauma inflicted on them by their parents.

Neither [of the girls has] a healthy attachment to [the mother] or [the father]. [The father] has not lived with or parented the girls since he walked away from the family in 2014. Since that time, [the father] has been almost entirely absent from the girls' lives, due to choices he has made, incarceration, and drug use. He does not understand the girls' needs, has no ability to meet those needs, and has no home into which the girls could reintegrate. The girls have more recently lived with [the mother], but [the mother]'s relationship with the girls has been marred by [the mother]'s poly substance abuse. [The mother]'s visitation with the girls has made matters worse, not better. [The mother] does not understand the girls' needs, and has no ability to meet those needs. [The mother]'s boyfriend . . . has never met [the girls]. [The mother's boyfriend's] comments that [the girls] . . . are welcome to move in with him in

the home of his parents, is fanciful and unpersuasive. Accordingly, [the mother] also lacks a stable home into which the girls could reintegrate.

[The older girl]'s comments regarding her future placement reflect deep ambivalence. On the one hand, [the older girl] has been overheard on occasion to say that she would like to return home with her mother. On the other hand, [the older girl] has more often commented that her mother is mean, lies constantly, and is not doing well enough to resume custody of the children. As a result, [the older girl] has not expressed a meaningful preference. In contrast, [the younger girl] has been quite clear about her preference. [The younger girl] would like to live with her foster family (although she understands that is not an option), or live with [the boy]'s foster family. [The younger girl] has not expressed a meaningful desire to live with [the mother].

The girls' placement with their therapeutic foster family is not pre-adoptive, but has nevertheless worked very well for [the girls]. The foster family has provided love, skillful care, an absence of trauma, and constancy. These are the ingredients the girls need in a permanent placement, which can be achieved through adoption. Both girls are desperate for a sense of permanency, and for [the older girl] especially, the ongoing uncertainty with regard to [the mother] and [the father] is painful and traumatizing. [The mother] and [the father] offer no reasonable hope of stability and permanency. Both girls are very adoptable, and adoption will provide an appropriate permanent placement for [the girls]. The Department is already exploring a possible kinship adoption. For all of these reasons, terminating the parental rights of [the mother] and [the father] is in the best interest of [the girls].

[¶6] The mother and father each filed a notice of appeal. *See* 22 M.R.S.

§ 4006 (2018); M.R. App. P. 2B(c)(1), (d).

[¶7]   Over two months later, on January 9, 2019, the father moved to permit trial court action on his post-judgment motion for an extension of time to file a Rule 60(b)(6) motion for relief from judgment alleging ineffective assistance of counsel at the termination hearing.  *See* M.R. Civ. P. 60(b)(6); M.R. App. P. 3(c)(2); *In re M.P.*, 2015 ME 138, ¶¶ 20-21, 27, 126 A.3d 718.  By order dated January 15, we granted the father's motion, and stayed the appeal pending trial court action.  The father filed his motion for an extension.

[¶8]   On January 25, 2019, the court (*Duddy, J.*) citing *In re M.P.*, 2015 ME 138, ¶ 20 n.4, 126 A.3d 718, denied the father's motion for an extension, concluding that the father "did not timely file his Rule 60(b)(6) motion, nor did he timely move for an extension of time," within the prescribed twenty-one day filing period.  The court concluded that, after "balancing the children's interest with [the father]'s interest," such "does not weigh in favor of [the father]'s interest.   There is nothing exceptional and unusual about [the father's] incarceration that would warrant an extension of time to file his Rule 60(b)(6) motion."  (Citing *In re Alijah K.*, 2016 ME 137, ¶ 14, 147 A.3d 1159 ("A parent who is unable to fulfill his parental responsibilities by virtue of being incarcerated is entitled to no more protection from the termination of his

8

parental rights than a parent who is unable to fulfill his parental responsibilities as a result of other reasons.").)

[¶9] The father filed a notice of appeal from that order, and we remanded the matter for the court to "perform an initial review of the motion immediately after it is filed to determine whether it raises sufficient grounds to warrant a response and any further proceedings." The father filed his Rule 60(b)(6) motion for relief from judgment. Attached to the motion were signed and sworn affidavits from the father, his own father, his mother, and a pastor; a signed letter from the father to an unidentified recipient requesting supervised visits with the girls; an unsigned and unsworn affidavit from his sister; a letter from the Director of Victim Services at the Department of Corrections, allowing the father one visit and two phone calls with the girls; and an email from the Department Permanency Caseworker indicating that the father may write a letter responding to the girls' letter to him.

[¶10] The court denied the motion after it "carefully and thoroughly reviewed [the father]'s motion, . . . the affidavits and other materials submitted" and the court's prior orders. The court found as follows:

> The Court concludes [the father] has not presented any persuasive reason justifying relief from the operation of the judgment. The Court rejects [the father]'s argument that if only his attorney had called the ten "potential" witnesses, or offered the seven suggested

documents, or managed his trial time differently, or taken other steps, the Court would have had insufficient evidence to make the required termination findings, or the outcome would somehow have been different. The Department proved its case by clear and convincing evidence, and the outcome with regard to [the father] was not close. The Court has specifically reviewed its findings regarding [the father]'s parental . . . fitness, and the children's best interest, in light of [the father]'s proffer in his Rule 60(b)(6) motion, and his supporting affidavits and materials, and concludes there is no reason to provide [the father] with relief from judgment.

[¶11] The father filed a notice of appeal from that order. We dismissed the father's appeal of the order denying his request for an extension, and consolidated his appeal of the order denying his Rule 60(b)(6) motion with the parents' appeals of the judgment terminating their parental rights.

## II. DISCUSSION

A.    Sufficiency of the Evidence

[¶12]   Here, the court's findings are sufficient to support the court's determinations that both parents are unwilling or unable to protect the children from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the children's needs, that both parents are unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet their needs, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), and that termination of the parents' parental rights

is in the children's best interest, *see id.* § 4055(1)(B)(2)(a). *See In re M.P.*, 2015 ME 138, ¶ 16, 126 A.3d 718.

1.    Parental Fitness

[¶13]  The mother argues that the court found her unfit "*mainly* because she 'failed to resolve her chronic substance abuse' by continuing to use drugs and abuse alcohol and Subutex," but that "the record is so void of support for that finding, the Trial Court could not even have been reasonably persuaded as to the same."  (Emphasis added.)  To the contrary, the court did not determine that the mother was unfit "mainly" for that reason; the court found her unfit for a multitude of reasons.  The court found, and the evidence supports, that, in addition to her illicit substance use and alcohol abuse, she has failed to seek out and obtain mental health treatment, nurture a healthy attachment to the children, and demonstrate an understanding of or ability to manage any of the children's physical and mental health needs.

[¶14]  There is also ample evidence to support the finding that she does continue to "use drugs and abuse alcohol and Subutex."  By the mother's own admission, she has used heroin, fentanyl, Percocet, and cocaine since the beginning of the child protection proceeding.  The court also heard testimony and found that the mother sought hospital treatment during the pendency of

this case where she reported that she had been drinking one-half of a 750-milliliter bottle of vodka per day and the hospital diagnosed her with "Daily and problematic pattern of alcohol consumption to suggest dependence and abuse." A urine sample, taken near the time she reported to the hospital, confirmed an "exceptionally high level" of alcohol that could corroborate her reported alcohol consumption. Although the mother testified that those facts are not true, the court found—as is in its discretion as fact-finder—the mother "to be a particularly untruthful and unreliable witness, to lack credibility on key factual issues as to her sobriety and use of alcohol." *See In re Child of Radience K.*, 2019 ME 73, ¶ 34, 208 A.3d 380; *In re Children of Tiyonie R.*, 2019 ME 34, ¶ 6, 203 A.3d 824.

[¶15] The mother also argues that the court erred in finding that she has "not improved" and that her housing arrangements for the children were "fanciful and unpersuasive" because, she argues, the Department investigated her care of her youngest child who remains in her care and has found "the exact opposite—that the Mother was fit and her home was safe and appropriate for an infant."

[¶16] The mother's fitness to parent one infant child with no known disabilities is significantly different than her fitness to parent any one of the

12

three children at issue in this case, much less all four children at once. The court found, and the record supports, that all of the children here struggle as a result of past harms inflicted upon them while in the mother's care, requiring therapy, special education sessions, and full, daily supervision by their foster parents. The testimony at trial is that in the past two years, the mother has attended a total of three of the boy's medical appointments, no appointments for the girls, and has attended only one school event. The mother has shown she has great difficulty during *supervised* visits in controlling and managing the needs of the three children and her infant son while all together. The mother has had to remove herself from the group visits with the four children due to feeling "overwhelmed." The court's findings as to the mother's parental unfitness are well supported by the record.

[¶17] The father testified that it would be at least nine to ten months before he might be ready to parent the girls. The court found that this predicted timeline was "unrealistic." The father argues that this finding is not supported by evidence in the record for the following reasons: he has been sober for nine months; he had previously attended Bay Street Recovery; he has been undergoing treatment and training while incarcerated; and he has family

support when released from prison. The entirety of the evidence fully supports the court's finding.

[¶18] The court found, and the evidence supports, that the father has been incarcerated on and off during the time that the girls have been in the Department's care. *See In re Alijah K.*, 2016 ME 137, ¶ 14, 147 A.3d 1159 ("A parent who is unable to fulfill his parental responsibilities by virtue of being incarcerated is entitled to no more protection from the termination of his parental rights than a parent who is unable to fulfill his parental responsibilities as a result of other reasons."). The evidence further shows that, while he was released from prison, he lacked stable housing; continued to use illicit drugs—including a relapse on cocaine in May 2017; received only some substance abuse counseling—admitting that he completed only two phases at Bay Street Recovery before being arrested; and received no mental health treatment despite his self-reported need for such treatment. The father testified that he has only recently begun treatment and, although he has been looking for sober housing programs for after his release, he does not presently have housing arranged. Moreover, although the father argues that he has been clean from substances for the past nine months, a majority of which he has spent incarcerated, his lack of consistent sobriety while he was not in prison supports

14

the court's finding that the father's "track record establishes that [he] is not willing or able to do the work necessary to improve his situation" or meet the girls' needs.

[¶19] The court's findings that the father is unwilling or unable to protect the girls from jeopardy or take responsibility for the girls within a time which is reasonably calculated to meet their needs are fully supported by the record.

2.    Best Interests of the Girls

[¶20]   The parents argue that the court's ultimate termination of their parental rights constituted an abuse of discretion because termination at this point, when the girls' current foster family is not willing to adopt them, fails to establish permanency for the girls.[2] We have frequently stated that, "[a]lthough permanency is often achieved through adoption, permanency can also be achieved through other arrangements." *In re Marcus S.*, 2007 ME 24, ¶ 10, 916 A.2d 225.  The concept of permanency is a dynamic one, and permanency in a particular case "must be fashioned from the actual circumstances and needs of the . . . children before the court." *Id.*  Based on the record before us, the court

---

[2] The mother also argues that there was not sufficient evidence presented at trial for the court to conclude that termination of her rights is in the boy's best interest.  As addressed above, the record fully supports the court's finding by clear and convincing evidence that termination is in the boy's best interest.  *Supra* ¶ 12; *see* 22 M.R.S. § 4055(1)(B)(2)(a) (2018).

did not abuse its discretion when it determined that termination is in the best interests of these two girls when the parents have demonstrated that they are unable to offer the children any semblance of permanency due to their failure to alleviate jeopardy over the two years since the removal of the girls, even with ample support from the Department. *See id.* ¶ 10-11; *cf. In re Thomas H.*, 2005 ME 123, ¶¶ 31-34, 889 A.2d 297 (vacating the denial of a petition to terminate parental rights when, considering the child's need for permanency, the denial prevented the child from being adopted). We discern no abuse of discretion in the court's conclusion that termination of the parents' parental rights was in each of the girls' best interests.

## B.    Post-Judgment Motion for Relief from Judgment

[¶21]  The father also argues that the court abused its discretion in denying his Rule 60(b)(6) motion for relief from judgment on the ground of ineffective assistance of counsel and that the court erred in denying his motion without affording him the opportunity of a hearing to create a testimonial record to support his claim. We address each argument in turn.

### 1.    Ineffective Assistance of Counsel

[¶22] The procedure for a parent to bring a claim of ineffective assistance of counsel through a motion for relief from judgment pursuant to M.R.

Civ. P. 60(b)(6) is now settled. *See In re M.P.*, 2015 ME 138, ¶¶ 19-21, 26-27,

126 A.3d 718.[3] Within twenty-one days following the expiration of the appeal

period, the parent filing the motion must submit a signed and sworn affidavit

stating, with specificity, that (1) counsel's performance was deficient—such

that it was incompetent or inefficient—and (2) the parent was so prejudiced by

that deficiency that it rose to the level of preventing a just result. *Id.* ¶ 21. If the

parent asserts that counsel's deficiency was due to his or her failure to call any

individuals as witnesses during the termination hearing, the parent's motion

must be accompanied by signed and sworn affidavits from those individuals.

*Id.* Similarly, if the parent asserts that counsel failed to offer certain exhibits

into evidence, the parent must attach those exhibits to the motion. *See generally*

*In re Aliyah M.*, 2016 ME 106, ¶ 8, 144 A.3d 50 (discussing the presentation of

extrinsic evidence through the parent's affidavit). Affidavits submitted to

support an alleged failure to call a witness or present specific evidence must be

from witnesses or refer to evidence known and available to counsel *before* the

---

[3] When the existing record provides sufficient facts to support a claim of ineffective assistance of counsel, the parent asserting the claim may do so on direct appeal. *See In re M.P.*, 2015 ME 138, ¶ 19, 126 A.3d 718; *see also In re Aliyah M.*, 2016 ME 106, ¶¶ 6-8, 144 A.3d 50. When, as is the case here, the basis for the parent's claim is not clear from the existing record, requiring the parent to present extrinsic evidence to establish his claim, the parent must promptly raise the claim to the trial court through a motion for relief from judgment pursuant to M.R. Civ. P. 60(b)(6). *See In re M.P.*, 2015 ME 138, ¶ 20, 126 A.3d 718; *see also In re Aliyah M.*, 2016 ME 106, ¶¶ 6-8, 144 A.3d 50.

hearing. If a parent fails to comply with this procedure, we will affirm a trial court's denial of the parent's Rule 60(b)(6) motion "[b]ecause of the counter-balancing interests of the State in ensuring stability and prompt finality for the child." *In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718. We review the factual findings underlying ineffectiveness claims for clear error and the trial court's ultimate denial of a Rule 60(b)(6) motion for an abuse of discretion. *In re Children of Jeremy A.*, 2018 ME 82, ¶ 21, 187 A.3d 602.

[¶23] Here, the father filed a signed and sworn affidavit with his motion stating why he believed his counsel at the termination hearing was deficient. He asserted that his attorney failed to call ten witnesses to present testimony at the termination hearing. In his motion, he provided signed and sworn affidavits from only three of those ten witnesses—his father, his mother, and a church pastor. The father also asserted that his attorney failed to present seven documents in evidence. In his motion, he provided three documents, none of which were identifiable as one of the seven that he had said his attorney failed to offer at trial. Accordingly, the father's motion ultimately relied on the three signed and sworn affidavits and three unlisted documents of minimal relevance. *See In re Tyrel L.*, 2017 ME 212, ¶ 8, 172 A.3d 916 (providing that

the court should consider the parent's motion when it complies with the procedural requirements of providing signed and sworn affidavits).

[¶24] We are left to review the three properly presented signed and sworn affidavits—from his father, his mother, and a church pastor—to determine whether the court erred in concluding that these affiants' assertions were insufficient to prove ineffectiveness. To properly assert ineffectiveness, the affiants would have needed to assert facts that, if presented at trial, could have rendered as unjust the court's finding that the father "has done next to nothing to alleviate jeopardy or take responsibility for the girls," that "[h]e does not understand the girls' needs, has no ability to meet those needs, . . . has no home into which the girls could reintegrate, . . . [and] offer[s] no reasonable hope of stability and permanency." None of the affiants asserted facts that spoke to contrary findings. Nor did the affiants provide evidence suggesting that the father will be able to maintain sobriety and stability after his release.

[¶25] To be clear, the Rule 60(b)(6) process that we have established is not intended to allow a parent to have a second chance to show that he is at last attending to the responsibilities of providing safe and nurturing care for his children. The process is specifically designed to avoid delays in the final adjudication of a parent's parental rights, allowing the children some hope of

permanence and finality, while at the same time allowing a parent to be heard if there has truly been a lapse in the service of the attorney. The trial court here understood the process, acted promptly and thoroughly, and reviewed the record carefully for any indication that prior counsel was ineffective. What the record established was that the father, himself, had been ineffective in maintaining sobriety and creating a safe home for his children, and that people who cared about him hoped that someday he would be able to do so. Given the father's failure to present any evidence demonstrating ineffective assistance of counsel, the court did not err in its conclusion.

2. Motion Hearing

[¶26] The father filed his Rule 60(b)(6) motion for relief from judgment nearly three months after the court entered the judgment terminating his parental rights onto the docket. *See In re M.P.*, 2015 ME 138, ¶¶ 19-20, 126 A.3d 718 (holding that the motion for relief from judgment should be filed no later than twenty-one days after the expiration of the period for appealing the underlying judgment). In what was perhaps an excess of caution, we permitted the trial court to act, but, to effectuate promptness, ordered that it do so "expeditiously" and suggested that it "perform an initial review of the motion immediately after it is filed to determine whether it raises sufficient grounds to

warrant a response and *any further proceedings*." (Emphasis added); *see In re Aliyah M.*, 2016 ME 106, ¶ 8, 144 A.3d 50 (holding that after the parent files a Rule 60(b)(6) motion, the trial court will then "make a prompt preliminary determination of whether to allow the parties to present additional testimony"); *In re M.P.*, 2015 ME 138, ¶ 36, 126 A.3d 718 (holding that "it is for the trial court to determine what process is necessary to meaningfully assess a parent's [Rule 60(b)(6)] claim"). The court did exactly as we ordered. After it determined that the father failed to make a prima facia case of ineffectiveness in the documents accompanying the motion, the court concluded that no hearing on his motion was necessary. We discern no error in the court's actions taken pursuant to our direction.

The entry is:

Judgments affirmed.

---

Amy McNally, Esq., Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant mother

Kristina Dougherty, Esq., Chester & Vestal, P.A., Portland, for appellant Father

Aaron M. Frey, Attorney General, and Zack Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

York District Court docket numbers PC-2016-08 and PC-2016-09
FOR CLERK REFERENCE ONLY