MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2017 ME 212
Docket:        Yor-17-211
Submitted
  On Briefs:   October 24, 2017
Decided:       October 31, 2017

Panel:         SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HUMPHREY, JJ.


IN RE TYREL L.


PER CURIAM

[¶1]  The father of Tyrel L. appeals from a judgment of the District Court (Biddeford, *Janelle, J.*) terminating his parental rights pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii), (iv) (2016).  He raises directly on appeal an ineffective assistance of counsel claim and challenges the court's discretionary determination of the child's best interest.  Concluding that the father failed to present a prima facie case of attorney ineffectiveness and that the record evidence supports the court's findings and best interest determination, we affirm the judgment.

I.  BACKGROUND

[¶2]  The Department of Health and Human Services initiated child protection proceedings as to the child on May 21, 2014.[1]  The court

---

[1]  The court (*Foster, J.*) terminated the mother's parental rights on April 27, 2016.  The mother does not appeal, and any facts relating to her will not be discussed in this decision.

2

(*Douglas, J.*) entered a preliminary protection order that day placing the child in Department custody. After a contested hearing, by order dated December 19, 2014, the court found jeopardy to the child based on neglect, the child's failure to thrive, the child's significant developmental delays, and the father's failure to engage in services recommended by the Department. The Department filed a petition to terminate the father's parental rights on December 14, 2015.

[¶3]  The court (*Janelle, J.*) held a one-day contested hearing on the Department's petition to terminate the father's parental rights on March 2, 2017. On that same date, the father's counsel asserted that the father stated that he wished to end the representation and filed a motion to withdraw, which the court denied. The court terminated the father's parental rights in a judgment dated March 28, 2017. The court based its unfitness and best interest determinations on the following findings of fact:

> The Department . . . filed this protective case [based on a] risk of immediate harm . . . premised on the parents' high severity neglect (substance abuse, mental health and cognitive impairment issues) and [the child] being a "failure to thrive" child. . . .
>
> . . . .
>
> [The father] acknowledges that he suffers from a chronic case of polysubstance abuse (alcohol, marijuana, cocaine and

other drugs) and that he also struggles with episodes of major depression and anxiety. . . .

Following the Department's intervention in this case and [the child's] placement in its custody the Department developed a reunification plan and made reasonable and appropriate services available to the family. [The father] alternatively chose not to access most services and opportunities or, at other times, chose not to invest himself in them. . . .

. . . .

[The father] acknowledges that he is not in a position, at this time, to provide what [the child] needs. [The child] has been in Departmental custody for the majority of his young life. His mother's rights have been terminated. [The father] admits that he is not yet ready to take responsibility for [the child].

[The father] admits that he needs substance abuse treatment. [He] acknowledges that what he really needs is not outpatient treatment but inpatient treatment. [He] also believes that he needs counseling . . . following substance abuse rehabilitation to begin to get a handle on his "anger management" issues. To date [the father] has not made arrangement[s] to enroll in such counseling. . . .

. . . .

. . . Most recently, [the child] has been in foster care since 2014 and now it is 2017. [The child] is placed in a pre-adoptive foster home. He has a bond with his foster parent . . . .

[¶4] The court further found that the child "has been diagnosed with autism, ADHD and mild cognitive impairment" and that "in order to succeed, [he] needs a great deal of attention, supervision, structure and patient, loving

4

care." The court found that the child's foster parent "is familiar with [the child's] diagnoses and the care he requires and has been able to meet [his] needs." Considering the child's "special needs" and because the child "has spent more than half of his life in State custody and still there is no parent who is really ready to take him," the court found that the child "requires permanency" through adoption.

[¶5] Based on these findings, the court found, by clear and convincing evidence, that the father is unwilling or unable to protect the child from jeopardy and that these circumstances are unlikely to change within a time which is reasonably calculated to meet his needs; he is unwilling or unable to take responsibility for the child within a time reasonably calculated to meet his needs; and he has failed to make a good faith effort to rehabilitate and reunify with the child.[2] *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), (iv); *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199. The court also found that termination of the father's parental rights is in the child's best interest. *See* 22 M.R.S. § 4055 (1)(B)(2)(a); *In re Robert S.*, 2009 ME 18, ¶ 15, 966 A.2d 894. The father appeals.

---

[2] The court initially made findings and determined the child's best interest from the bench at the end of the termination hearing. The court then asked the Department to submit a draft incorporating the findings made and then signed an order terminating the father's parental rights on March 28, 2017, which was entered on April 3, 2017.

## II. DISCUSSION

[¶6]  In his appeal, the father directly raises a claim that his counsel for the termination proceeding was ineffective.[3]  Because we have not "frequently addressed issues of ineffective assistance of counsel in cases of termination of parental rights," *In re Evelyn A.*, 2017 ME 182, ¶ 38, --- A.3d --- (Alexander, J., dissenting), we first write to address the father's ineffective assistance claim and reiterate "the strict procedural requirements applicable to a direct appeal." *In re Aliyah M.*, 2016 ME 106, ¶ 10, 144 A.3d 50.

[¶7]  "We have held that there are two ways a parent can raise a claim of ineffective representation in a termination case." *Id.* ¶ 6; *In re M.P.*, 2015 ME 138, ¶ 27, 126 A.3d 718.  "First, if there are no new facts that the parent seeks to offer in support of the claim, the parent may make an ineffectiveness claim in a direct appeal from a termination order." *In re Aliyah M.*, 2016 ME 106, ¶ 6, 144 A.3d 50 (quotation marks omitted).  Second, if the existing record does not clearly provide the "basis for the parent's ineffectiveness challenge" and the claim "would require a court to consider extrinsic evidence, the parent must *promptly* move for relief from a judgment terminating his or her

---

[3]  The court (*Janelle, J.*) granted the father's counsel's motion to withdraw on March 16, 2017. The court (*Foster, J.*) then entered an order substituting counsel on March 24, 2017.

6

parental rights pursuant to M.R. Civ. P. 60(b)(6)." *Id.* (quotation marks omitted).

[¶8] Regardless of how the parent seeks to present the claim, the parent "must execute and file an affidavit stating, with specificity, the basis for the claim." *Id.* ¶ 7 (quotation marks omitted). "[I]f a parent fails to submit a signed and sworn affidavit, the ineffectiveness claim . . . must be denied." *Id.* ¶ 9 (quotation marks omitted). An affidavit filed on direct appeal "must not contain information that is extrinsic to the existing record." *Id.* ¶ 7. When a parent properly submits the required signed and sworn affidavit on direct appeal:

> we will review the existing record to determine whether the evidence in that record creates a prima facie showing of ineffectiveness. This consists of a prima facie case that (1) counsel's performance was deficient, i.e., that there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance below what might be expected from an ordinary fallible attorney; *and* (2) the deficient performance prejudiced the parent's interests at stake in the termination proceeding to the extent that the trial cannot be relied on as having produced a just result. If a parent makes a prima facie showing of both elements of an ineffectiveness claim based on the record on appeal, we will remand the case to the trial court so that the court can adjudicate the full merits of [the ineffectiveness] claim.

*Id.* ¶ 12 (quotation marks omitted).

[¶9] Here, the father pursues the first of these procedural mechanisms; he filed a signed document with his appeal stating why he believed his counsel at the termination hearing was deficient. *See id.* ¶ 6. The father claims that his counsel was deficient because his counsel (1) did not help him prepare for the hearing, (2) did not call any witnesses or introduce any exhibits, (3) "did not try very hard" or cross-examine any witnesses effectively, and that, because of these failures, the father did not understand what was happening and could not show the court how he could be responsible for parenting the child.

[¶10] The father's ineffectiveness claim is deficient in three respects. First, the statement he submitted, although signed, is not an affidavit because it bears no jurat. The father's purported affidavit is signed, but not sworn, in violation of an express requirement that a parent raising an ineffective assistance of counsel claim directly on appeal "*must* submit a signed *and sworn* affidavit stating, with specificity, the basis for the claim." *In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718 (emphasis added). The strict procedural requirements for ineffective assistance claims we first articulated in *In re M.P.* "are designed to balance the parent's due process interests against the State's interests in providing stability and permanency for the child" and therefore it is imperative that parents—and their counsel—ensure full compliance with

these requirements. *In re Aliyah M.*, 2016 ME 106, ¶ 9, 144 A.3d 50. Thus, because the father's statement does not comply with this procedural requirement, that alone is a sufficient basis for us to decline to remand the ineffectiveness claim to the trial court. *See id.*

[¶11] Second, the father "draws on information that goes beyond the record" in presenting his claim, which constitutes a second ground for denying the father a remedy on this argument. *Id.* ¶ 10. For instance, the father claims that his attorney "did not contact me to help prepare for the hearing," that the attorney "only sent me notice of the hearing three weeks before, even though his letter was dated much earlier," and that "I was not prepared because I had not had a chance to meet with my lawyer to talk about the case." The father also states that he "wanted [the attorney] to call witnesses to testify about many things" and that his attorney should have introduced "exhibits on my behalf to show what the doctor(s) had found or to show the services that I had engaged in." This information is extrinsic to the existing record from the trial court and we, therefore, do not consider it further. *See id.* ¶ 13.

[¶12] Third, even if we considered the father's "affidavit" and other extrinsic information, along with the other assertions by the father, the father

has failed to present a prima facie showing of "serious incompetency, inefficiency, or inattention [by the father's] counsel amounting to performance below what might be expected from an ordinary fallible attorney." *In re M.P.*, 2015 ME 138, ¶ 27, 126 A.3d 718 (alterations omitted) (quotation marks omitted). During the hearing, counsel objected to each of the Department's exhibits, cross-examined four out of the five witnesses, and requested a recess to discuss with the father whether he wanted to take the stand. In short, counsel's performance did not reflect serious incompetence, inefficiency, or inattention. In addition, we need not reach the "question of whether [the father's] contentions arguably constitute deficient representation, [because] they do not rise to the level of a prima facie showing of prejudice." *In re Aliyah M.*, 2016 ME 106, ¶ 15, 144 A.3d 50.

[¶13] Viewed in its entirety, "the record does not support a genuine claim that the [father] was prejudiced by counsel's alleged failure[s]." *Id.* ¶ 17. The father claims that his counsel "did not try very hard to present [his] side of the case" and that his counsel's deficient performance prevented the court from seeing "how [he] could be responsible for parenting [the child]." Contrary to the father's contentions, he had ample opportunities during the hearing to tell the court his "side of the case." The guardian ad litem asked the

father about the personal services he had completed and was currently seeking, and the father's counsel asked him how his progress with substance abuse treatment was going. Furthermore, during a lengthy discussion with the court, the court asked the father, "[W]hat do you think should happen [to the child] and explain to me what your plan would be to make that happen?" The court also asked the father, "[I]s there anything else you wanted to tell me before you step down?" The father, therefore, had ample opportunity to present his version of events and attempt to persuade the court of his parenting ability.

[¶14] The father also claims that his counsel's ineffectiveness prevented the court from having "sufficient evidence before it to adequately assess the best interest of [the child] and the efforts of [the father] to reunify." To the contrary, the court heard testimony regarding the child's current placement, special needs, and the father's ability to meet those needs from the child's foster care supervisor, family visitation supervisor, Department caseworker, guardian ad litem, and the father himself. In light of the father's admissions and the other competent record evidence of the child's best interest, the additional information provided by the father in his brief and signed document is insufficient "to raise a tenable claim that the trial failed to

produce a just result." *Id.* ¶ 21. We therefore conclude that the father's ineffective assistance of counsel claim fails as a matter of law because he has failed to present "a prima facie case that [he] was prejudiced by any deficiencies in trial counsel's representation." *Id.* ¶ 22.

[¶15] The father also challenges the court's determination that termination is in the best interest of the child. During the hearing, the father admitted that he is incapable of taking responsibility for the child at this time; that he needs inpatient treatment for his ongoing substance abuse issues; and that after treatment, he still needs counseling "to begin to get a handle on his anger management issues."[4] The child has spent more than half of his young life—most recently, three consecutive years—in Department custody and has a bond with his current foster mother, who plans to become a permanent placement for him. Contrary to the father's contentions, the court's findings are supported by competent evidence in the record and the court did not err or abuse its discretion in determining that termination of the father's parental rights, with a permanency plan of adoption, is in the child's best interest. *See In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

---

[4] The father also concedes that the record evidence is sufficient to support the court's finding of at least one ground of parental unfitness and does not challenge the court's determination of unfitness on appeal.

The entry is:

Judgment affirmed.

---

Valerie A. Randall, Esq., Rioux, Donahue, Chmelecki & Peltier LLC, Portland, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services