MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2023 ME 76
Docket:          Ken-23-179
Submitted
 On Briefs:      October 18, 2023
Decided:         December 19, 2023

Panel:           STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.


IN RE CHILDREN OF SHANNEVIA Y.


STANFILL, C.J.

[¶1]  The mother of two children appeals from a judgment of the District Court (Waterville, *Dow, J.*) terminating her parental rights to the children, arguing that she was deprived of effective assistance of counsel during the termination proceedings.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In May and June 2021, the Department of Health and Human Services petitioned for child protection and preliminary protection orders on behalf of the children.[1]  The court (*Benson, J.*) issued preliminary protection orders temporarily placing the children in the Department's custody.

---

[1] The children have different fathers, resulting in separate cases which were consolidated for the termination hearing and this appeal.  Both fathers' parental rights have been terminated, and neither has appealed.

[¶3] In September 2021, the court (*Dow, J.*) entered a jeopardy order by agreement, and the children remained in the Department's custody. The court found that the children would be in jeopardy in the mother's care based on the mother's "ongoing alcohol abuse and unsafe behavior," including her three recent arrests for alcohol-related issues; positive alcohol tests during the pendency of the case; and decision to permit her boyfriend, a convicted sex offender, to care for the children without supervision. Between January 2022 and September 2022, the court issued three judicial review orders in which it ordered continued custody with the Department. The court found, inter alia, that although the mother had engaged in treatment for substance use disorder, she had "continue[d] to struggle with decision-making and having unsafe people around" the children and had been charged with multiple additional crimes.

[¶4] After the Department filed petitions for termination of the mother's parental rights, the court held a termination hearing in March 2023. At the outset of the hearing, the mother's attorney successfully advocated for the mother's mother (the grandmother) and the mother's aunt (the great-aunt) to each be granted interested-person status. The mother's attorney presented the testimony of the mother, the grandmother, and the great-aunt, and argued that

the court should consider appointing the grandmother or the great-aunt as a permanency guardian or keep the record open for a short period of time so that background checks could be completed. *See* 22 M.R.S. § 4038-C(1)(E) (2023).

[¶5] After the hearing, the court issued a judgment terminating the mother's parental rights. The court found the following facts, which are supported by competent evidence in the record. *See In re Children of Jason C.*, 2020 ME 86, ¶ 7, 236 A.3d 438. The mother "struggles with a chronic drinking problem." Although she has made some progress through treatment and has had appropriate visits with the children, she has been unable to make sufficient progress to justify requiring the children to wait any longer for a permanent resolution. While the case was pending, she repeatedly tested positive for alcohol, maintained contact with dangerous people, formed new relationships with dangerous people, and committed various crimes, including OUI, violation of condition of release, operating after suspension for OUI, and operating after revocation. At the time of the termination hearing, she was in prison, serving a sentence of nine months and one day. She expected to be released from prison about three months after the hearing. When the court issued its judgment, one child was five years old and the other was almost four years old, and both had been in the Department's custody for a significant portion of their lives. The

4

children have been in the same pre-adoptive resource placement since August 2021, and they are thriving.

[¶6] The court found that the mother is unable to take responsibility for the children or protect the children from jeopardy within a time reasonably calculated to meet their needs, and that termination of her parental rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2023).

[¶7] Addressing the permanency plan, the court discussed the mother's proposals that the grandmother or the great-aunt be appointed as a permanency guardian under 22 M.R.S. § 4038-C. Relying on evidence in the record, the court found that although the grandmother was local, stable, and involved, she was "more loyal to [the mother] than to the children" and lacked the ability "to be objective about [the mother's] alcohol abuse and her reckless choices." As to the great-aunt, the court found that she "lacks the close connection with the children that [the grandmother] has," lives far away, and has exhibited "fealty" to the mother by deferring to the mother about whether to offer to care for the children. The court also expressed concern that the great-aunt's husband had "an open [child protection] case in Massachusetts involving the two children he has" with another person. The court determined

that the record could not support the findings required to order a permanency guardianship, *see* 22 M.R.S. § 4038-C(1)(A)-(E), that neither proposed permanency guardianship would serve the children's best interests, and that a plan of adoption is in the children's best interests.

[¶8]  The mother timely appeals.

## II. DISCUSSION

[¶9]  The mother argues only that she was denied effective assistance of counsel during the termination proceedings.[2]  We are not persuaded, and we reiterate that we review only the existing trial record when a parent raises such an argument for the first time in an appeal directly from a judgment terminating parental rights.  *See, e.g.*, *In re Aliyah M.*, 2016 ME 106, ¶¶ 7, 12, 144 A.3d 50.

[¶10]  In *In re M.P.*, we determined that a parent may raise a claim of ineffective assistance of counsel in a termination of parental rights proceeding either by motion pursuant to Maine Rule of Civil Procedure 60(b) or on direct appeal from the judgment terminating parental rights.[3]  2015 ME 138,

---

[2] The mother does not challenge the court's determinations that she is unfit to parent the children, that termination of her parental rights is in the children's best interests, or that the record before the court did not support ordering a permanency guardianship rather than adoption.  Those determinations are supported by the evidence, and there was no abuse of discretion.  *See* 22 M.R.S. §§ 4038-C, 4055(1)(B)(2)(a), (b)(i)-(ii) (2023); *In re Children of Jason C.*, 2020 ME 86, ¶ 7, 236 A.3d 438; *In re Child of Domenick B.*, 2018 ME 158, ¶¶ 8-10, 197 A.3d 1076.

[3] A motion under Rule 60(b) is necessary where the existing record is insufficient to permit resolution of the claim of ineffective assistance—where "the record does not illuminate the basis for

¶¶ 19-21, 126 A.3d 718.  A parent may raise a claim of ineffective assistance in a direct appeal without first having sought relief from the judgment in the trial court "if there are no new facts that the parent seeks to offer in support of the claim."  *Id.* ¶ 19.  In other words, the direct-appeal route may be pursued when *the existing trial record* "is sufficiently well developed to permit a fair evaluation of [the] parent's claim."  *Id.*  We take this opportunity to reiterate that although we have required a parent asserting such a claim on direct appeal to "submit a signed and sworn affidavit," *id.* ¶ 21, "the affidavit *must not contain information that is extrinsic to the existing record*," *In re Aliyah M.*, 2016 ME 106, ¶ 7, 144 A.3d 50 (emphasis added); *accord In re Children of Kacee S.*, 2021 ME 36, ¶ 13, 253 A.3d 1063 (same); *In re Tyrel L.*, 2017 ME 212, ¶ 8, 172 A.3d 916 (same); *In re M.P.*, 2015 ME 138, ¶ 21 n.5, 126 A.3d 718 (same).

---

the challenged acts or omissions of the parent's counsel."  *In re M.P.*, 2015 ME 138, ¶ 20, 126 A.3d 718.  In those circumstances,

> the parent must *promptly* move for relief from a judgment terminating his or her parental rights pursuant to M.R. Civ. P. 60(b)(6) to raise a claim of ineffective assistance of counsel.  The motion for relief from judgment should be filed no later than twenty-one days after the expiration of the period for appealing the underlying judgment.

*Id.*  The mother did not file a Rule 60(b) motion.  Although she argues persuasively that compliance with the twenty-one-day time limit would have been nearly impossible given the time it takes to appoint new counsel, obtain the file and record, and review the case, we note that trial courts may accept later-filed Rule 60(b) motions raising ineffective assistance.  *Id.* ¶ 20 n.4; *see In re Children of Kacee S.*, 2021 ME 36, ¶¶ 15, 17 & n.5, 253 A.3d 1063 (concluding that "extraordinary circumstances" existed to permit review of the denial of a late-filed Rule 60(b) motion alleging ineffective assistance, where the parent had "moved expeditiously" to "pursue her ineffectiveness claim with diligence and alacrity").

[¶11]  As we have explained, we "review *the existing record* to determine whether the evidence in that record creates a prima facie showing of ineffectiveness." *In re Aliyah M.*, 2016 ME 106, ¶ 12, 144 A.3d 50 (emphasis added).  "This consists of a prima facie case that (1) counsel's performance was deficient, i.e., that there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance below what might be expected from an ordinary fallible attorney; *and* (2) the deficient performance prejudiced the parent's interests at stake in the termination proceeding to the extent that the trial cannot be relied on as having produced a just result."[4]  *Id.* (quotation marks omitted).

[¶12]  Here, in connection with her direct appeal, the mother filed her own affidavit together with affidavits of the grandmother and the great-aunt. *Cf. id.* ¶ 8 (requiring a parent to submit affidavits of other persons with information that the parent wants the court to consider *when pursuing an ineffectiveness claim by means of a Rule 60(b) motion*).  All of the affidavits contain information extrinsic to the existing trial court record, which we will not consider. *See In re Tyrel L.*, 2017 ME 212, ¶¶ 6-11, 172 A.3d 916 (reiterating "the strict procedural requirements applicable to a direct appeal" raising

---

[4]    We decline the mother's invitation to abandon entirely the prejudice prong of the ineffective-assistance analysis.  *See In re M.P.*, 2015 ME 138, ¶¶ 22-27, 126 A.3d 718.

ineffective assistance and explaining that including in an affidavit information extrinsic to the existing record was an independent "ground for denying the [parent] a remedy" (quotation marks omitted)).

[¶13]  The existing trial court record does not generate a prima facie showing of ineffectiveness.  The mother concedes that "[t]he evidence of [her] unfitness was strong."  She points out that her attorney did not cross-examine the Department's witnesses' testimony about undisputed historical events, but that did not render the attorney's performance deficient.  Instead of dwelling on the mother's acknowledged relapses and the consequences of those relapses, the attorney focused the mother's testimony on her substantial efforts to seek and engage in treatment, the insight she had gained, and her bond with and love for her children.  This was not an unreasonable trial strategy.

[¶14]  With respect to the mother's goal of a permanency guardianship with a family member if she could not reunite with the children, the record demonstrates that the mother's attorney secured the grandmother's and great-aunt's attendance at the trial, advocated successfully for their status as interested persons, elicited testimony relevant to their suitability as guardians, and argued strenuously that appointing them would be in the children's best

interests and would promote the legislative policy of maintaining family integrity.

[¶15]   The relevant testimony—both from the grandmother and great-aunt and from the caseworkers who had interacted with them during the pendency of the case—supports the court's findings that the grandmother and the great-aunt would not be suitable permanency guardians.   Nothing in the record suggests that the mother's attorney failed to present other, contradictory evidence.   The record therefore does not generate a prima facie showing that the mother's attorney's performance was deficient or undermines confidence in the result.   *See id.*

The entry is:

Judgment affirmed.

---

Seth Berner, Esq., Portland, for appellant Mother

Aaron M. Frey, Attorney General and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

Waterville District Court docket numbers PC-2021-23 and PC-2021-24
FOR CLERK REFERENCE ONLY